IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEMITRI BROWN AND DONNA EVANS-BROWN, | § § § | |
| Plaintiffs, | § § | |
| V. | § | No. 3:12-cv-4947-P |
| CHRISTOPHER B. BRIDGES, ET AL., | § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendant Christopher Bridges ("Defendant" or "Bridges") has filed a Motion for Plaintiffs Demitri Brown ("Plaintiff") and Donna Evans-Brown (collectively, with Demitri Brown, "Plaintiffs") to be Held in Civil Contempt. *See* Dkt. No. 109. Plaintiff Demitri Brown has filed a Motion for Sanctions against Bridges. *See* Dkt. No. 108. District Judge Jorge A. Solis has referred both motions to the undersigned magistrate judge. *See* Dkt. No. 112.

For the reasons explained below, Plaintiff Demitri Brown's Motion for Sanctions [Dkt. No. 108] and Defendant's Motion for Plaintiffs to be Held in Civil Contempt [Dkt. No. 109] should be denied.

**Background and Analysis**

As Judge Solis has already observed, "[t]he parties in this case have had a hard time getting along." Dkt. No. 69 at 1. That has proven to be dependably true. That, and that Defendant will ask in almost every motion for dismissal with prejudice of

Plaintiffs' claims and a default judgment against Plaintiffs on Defendant's counterclaim. And that Plaintiff will ask in almost every motion for hundreds of thousands, if not millions, of dollars in sanctions. And perhaps dismissal of Defendant's counterclaim and judgment for Plaintiffs on their claims. So here again.

Judge Solis also observed back in October 2013 that, since July 2013, "the docket has been dominated by filings related to discovery obligations and what sanctions are appropriate to encourage [Plaintiffs] to comply." *Id.* Unfortunately, that, too, has not changed in the ensuing eight months – except that motions to encourage Defendant to comply with his discovery obligations have been added to the mix.

To put this all into perspective, as Judge Solis has explained, "[t]his is a dispute over [Plaintiffs'] use of 'Disturbing The Peace' and Defendants' use of 'Disturbing Tha Peace,'" in which "[e]ach asserts that the other is infringing on a trademark that they own." Dkt. No. 94 at 1. "Brown initially sued Bridges in 2012 for copyright infringement, see Doc. 1, and Bridges responded by bringing counter-claims against Brown for violation of his alleged trademark, see Doc. 8. The allegations from each party are run-of-the-mill: I developed this intellectual property first and the other guy started using it later." Dkt. No. 100 at 1. Also relevant to the discussion that follows is Judge Solis's observation that "[t]he Court recognizes that Demetri Brown is a pro se civil litigant who is currently incarcerated," although "Brown is accompanied by an un-incarcerated co-plaintiff." Dkt. No. 94 at 3 n.1.

Plaintiff Demitri Brown at times has sought to skip over or avoid discovery and have the Court summarily determine that "he should win the case." *Id.* at 4. At times

this takes the form of motions to win, or requests to avoid discovery because he is going to win, *see id.*; Dkt. No. 108 at 2 (seeking dismissal of Defendant's counterclaims with prejudice and entry of judgment against them), and at times Plaintiff requests for sanctions in monetary amounts that might effectively result in a win without needing to reach the merits of Plaintiffs' claims for damages, *see* Dkt. No. 108 ($2 million); Dkt. No. 111 ($3 million). Plaintiff has also argued that Defendant has failed to properly respond to discovery requests and has unethically used discovery requests to prevent a ruling on the merits. *See* Dkt. No. 83 at 1. For his part, Defendant believes that Plaintiffs' conduct in the case so far is so egregious that the case should be resolved by sanctions disposing of the case. *See, e.g.*, Dkt. No. 109 at 2-3.

The undersigned believes that neither party is correct. The case is in the discovery stage. This is not the stage for the Court to resolve the merits of the parties' respective claims, as Judge Solis has repeatedly explained. *See* Dkt. No. 21 at 1 ("Motions for summary judgment shall be deemed premature until the conclusion of discovery."); Dkt. No. 79 (denying another motion for summary judgment filed by Plaintiffs as premature); Dkt. No. 94 at 4 ("Brown also mistakes discovery for the time to litigate the merits of a case."); Dkt. No. 100 (denying Plaintiff's motion for judgment on the pleadings); Dkt. No. 104 (denying Plaintiff's motion for reconsideration of the order denying his motion for judgment on the pleadings and noting that, "[a]s a reminder, the parties are barred from filing Motions for Summary Judgment until after the close of discovery" and, [i]f Brown files another pre-mature Motion for Summary Judgment, the Court will consider the imposition of sanctions").

Each in his own way, neither Plaintiff Demitri Brown nor Defendant appears to wish for this case to get to the point at which discovery is closed and Judge Solis can consider summary judgment motions. (Plaintiff Donna Evans-Brown apparently has never filed anything on her own in any of the discovery disputes in this case.)

But "litigation is not a game, but a proof and decision-making process," *Bintliff v. United States*, 462 F.2d 403, 407 (5th Cir. 1972), the time-honored method of seeking and finding the truth and doing justice. And the discovery stage of this or any other case is not a forum for the parties to engage in brinkmanship by employing sharp tactics just up to the point that the Court issues dispositive sanctions. It is not a forum for taking a tit-for-tat approach of withholding responsive documents or information when one party perceives that the other is doing that in response to his or her discovery requests. It is not a forum for a party to repeatedly throw allegations of fraud and unethical behavior at an opponent in the hope that saying it enough will make it true – even though these "allegations, when inappropriately made, add much heat but little light to the court's task of deciding discovery disputes." *Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 289 (N.D. Tex. 1988). And discovery is not meant to be the setting for the Court to dispose of claims – although the Court can and should deploy the "draconian" sanctions of dismissal and default judgment as a last resort where nothing else will deter litigants from flouting the rules or discovery orders. *See U.S. For Use of M-CO Const., Inc. v. Shipco General, Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

The discovery rules are a device established by the Federal Rules of Civil

Procedure for the parties to identify and exchange the information necessary for litigating the merits of the claims and defenses in a case. *See Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 515 (5th Cir. 1993) ("The discovery rules serve to 'narrow and clarify the basic issues between the parties' and function as a vehicle for locating the sources of relevant facts and eventually, ascertaining those facts."); *Dilmore v. Stubbs*, 636 F.2d 966, 869 n.2 (5th Cir. Unit A 1981) ("The rules of discovery are designed to narrow and clarify the issues and give the parties mutual knowledge of all relevant facts, thereby preventing surprise."); *see also DVH Companies, Inc. v. Bropfs Corp.*, No. 3:06-cv-2084-P, 2007 WL 3284324, at *2 (N.D. Tex. Nov. 6, 2007) ("Discovery is designed to reveal whether factual assertions made by the movant are in dispute."). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616 (5th Cir. 1977). "The discovery rules are designed to aid in the expedient flow of litigation so that meritorious disputes may be heard and resolved in a reasonable period of time and at a reasonable cost to the parties." *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1033 (5th Cir. 1990). As such, "[i]t is not acceptable for a party to attempt to use the judicial system to punish financially or to harass an opponent in order to gain an unfair advantage in litigation." *Id.*

If any party here believes that discovery is something more or different than what has just been described, he would be well served to understand what the Court understands the function and purpose of discovery to be and to conduct himself accordingly going forward. The Court should not be continually thrust into the role of

"arbitrat[ing] the no show and no tell discovery games engaged in by the parties to this lawsuit." *SCM Societa Commercile S.P.A. v. Industrial & Commercial Research Corp.*, 72 F.R.D. 110, 111 (N.D. Tex. 1976).

And the parties are reminded again that, even if they may not like each other, they must start communicating to complete discovery, must fully comply with the Court's orders, and must move this case forward in an orderly manner – or face serious sanctions for failing to do so. The Court's orders are not difficult to understand. Offering to make documents available at a remote location without giving the other party the information needed to make the offered inspection does not fully comply with the Court's order. Neither does offering to make documents available in an office several states east of the Federal Correction Institution in which another party is incarcerated. And offering to enter into a contract in lieu of payment of a court-ordered fee award does not comply with the Court's order.

<u>Defendant's Motion for Plaintiffs to be Held in Civil Contempt</u>

Defendant's motion [Dkt. No. 109] arises from the undersigned's order April 1, 2014 Order on Attorneys' Fees and Costs, awarding Defendant $19,342.00 in attorneys' fees and costs to Defendant Chris Bridges under Federal Rule of Civil Procedure 37(a)(5)(A) and ordering Plaintiffs Demitri Brown and Donna Evans-Brown to pay Defendant Chris Bridges this amount by May 1, 2014. *See* Dkt. No. 105 at 8.

According to Defendant, neither of the Plaintiffs has paid Bridges the award or any lesser sum. *See* Dkt. No. 109 at 1. Defendant reports that his "counsel has sent a letter and two e-mails to Plaintiffs concerning their obligation to pay the Award, but

has not received any response whatsoever." *Id.* Defendant argues that, "[w]hen a party willfully disobeys an order or is grossly indifferent to it, sanctions available under Rule 37(b) are appropriate"; that "Plaintiffs have elected to not pay the Award and have willfully ignored and remained indifferent to the Court's Order entering the Award and to Bridges' counsel's communications to Plaintiffs concerning the same"; and that, "pursuant to its inherent authority and Fed. R. Civ. P. 37(b)(2)(A), the Court [should] hold Plaintiffs in civil contempt for failing to pay the Award and dismiss Plaintiffs' claims with prejudice and enter default judgment against them as to Bridges' counterclaims." *Id.* at 2. According to Defendant, "[l]ess drastic sanctions or allowing Plaintiffs another extended deadline to pay the Award will be futile given the Court's experience with Plaintiffs' misbehavior and continued abusive litigation tactics in this lawsuit." *Id.* at 2-3.

Plaintiff Demitri Brown responds by accusing Defendant of filing "a fraudulent document containing knowingly false statements and a knowingly false declaration." Dkt. No. 115 at 1. According to Plaintiff, "Defendants' scam is so transparent it is beyond any rational reason why the court has not sanctioned defendants under Rule 11," and "Defendants have filed numerous false and fraudulent statements and documents, and have been shown beyond all doubt to have forged and submitted numerous false declarations." *Id.* Plaintiff continues: "The court's refusal to address these numerous unethical and unlawful acts has only encouraged defendants to continue to file more. There can be no doubt that defendants feel as if they have 'bought' this case." *Id.* at 1-2. And Plaintiff Demitri Brown asserts that, based on "the

numerous false and fraudulent acts by defendant this court must sanction them under rule 11, including the dismissal of all defendants' fictitious claims and deny all of defendants' fraudulent pleading and filings." *Id.* at 2.

But, as to this particular motion, Plaintiff does not dispute that he has not paid the fee award that this Court ordered, based on an order that Judge Solis affirmed. *See* Dkt. Nos. 46, 94, & 105. Instead, Plaintiff contends that "defendants falsely claim plaintiffs have not responded to the court's order" requiring Plaintiffs to pay the fee award to Bridges. Dkt. No. 115 at 2. Plaintiff explains that he "sent defendants a contract on or about April 24, 2014 in satisfaction of the court's order" and that this "document clearly states for defendant to respond in seventy-two hours if it is not to their satisfaction" but that "[i]nstead defendants continue to run to the court as if plaintiff is not following the court's order." *Id.* Apparently referring to Defendant's presenting to the Court his belief that Plaintiffs are not complying with the Court's orders, Plaintiff contends that "[t]his is an old scam and this court should not allow it to continue." *Id.*

Defendant replies that neither Bridges nor his counsel has received any communication or contract by Plaintiff regarding the fee award but that it does not matter because Plaintiff tacitly admits that Plaintiffs have not complied with the Court's order instructing them to pay Bridges the sum of $19,342.00 by May 1, 2014 and the Court's order therefore remains unsatisfied. *See* Dkt. No. 1-2. According to Defendant, "Plaintiffs have willfully disobeyed and are grossly indifferent to the Court's Order to pay the Award," and "Rule 37(b) sanctions are justified here, and

Bridges respectfully requests that the Court hold Plaintiffs in civil contempt for failing to pay the Award and dismiss Plaintiffs' claims with prejudice and enter default judgment against them as to Bridges' counterclaims." *Id.* at 2 (footnote and citation omitted).

Much of Plaintiff's response is devoted to taking issue with whether he sent a communication to Defendant's counsel transmitting a contract in alleged satisfaction of the Court's order. The parties dispute whether Defendant received this communication.

Much as before, *see* Dkt. No. 106 at 2, the undersigned will not resolve this collateral dispute between the parties as to who sent what letter to whom and when one party or the other did or did not receive it. There is no need for the Court to do so.

Plaintiff Demitri Brown admits that Plaintiffs have not paid Bridges the sum of $19,342.00 by May 1, 2014, as the Court ordered. *See* Dkt. No. 105. The Court's order did not call for Plaintiffs to enter into a contract with Defendants, and Defendants are not required to accept such an offer in lieu of the court-ordered payment, even if it was offered.

Defendant makes no secret of his frustration with Plaintiffs' conduct in this case. And Defendant complains that Plaintiffs still have not complied with "Bridges' request for contact information for Plaintiffs' agent (Tongula Veal) for the purpose of scheduling an inspection of Plaintiffs' documents in Louisiana." Dkt. No. 118 at 2 n.1. But Defendant has not moved for sanctions on that basis and admits that this is a "collateral issue" but one that, Defendant asserts, "further echoes the fact that

-9-

Plaintiffs have no intention to comply with the Court's directive to move this case forward in an orderly manner." *Id.*

Plaintiffs' compliance with the Court's order requiring Plaintiffs' responses to Defendant's discovery requests is not before the Court. But Plaintiffs have been warned that they must comply with their obligations to make their documents available for inspection, as ordered by the Court, *see* Dkt. No. 46; Dkt. No. 117, and that, "if they do not comply with [their] obligations [], they will be in violation of the Court's order and subject to harsher sanctions, including the possible dismissal of their claims against Defendant," Dkt. No. 117 at 1. In fact, Plaintiffs have been repeatedly warned of the possibility of further sanctions for failing to comply with the Court's orders. *See* Dkt. No. 47 at 5; Dkt. No. 99 at 3.

But, as to Plaintiffs' failure to comply with the Court's order awarding fees, Defendant have not met the heavy standard for dismissal and default judgment as a Rule 37(b) sanction. As the undersigned has previously explained, Rule 37 allows the district court to sanction a party for failing to comply with a discovery order by taking any number of possible actions, including "dismissing the action or proceeding in whole or in part" and "rendering a default judgment against the disobedient party." FED. R. CIV. P. 37(b).

Under Rule 37(b)(2)(A), the Court may treat as contempt of court a party's failure to obey an order to provide or permit discovery. *See* FED. R. CIV. P. 37(b)(2)(A)(vii). A party seeking an order of civil contempt must establish by clear and convincing evidence that: (1) a court order was in effect; (2) the order required certain

conduct by the respondent; and (3) the respondent failed to comply with the Court's order. *See Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999). A party commits contempt by violating a court's definite and specific order that requires him to perform or refrain from performing a particular act or acts with knowledge of the court's order. *See id.* Civil contempt is appropriate to either bring a party into compliance with the court order and/or to compensate the complaining party for losses sustained due to failure to comply. *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000). Sanctions available under Rule 37(b) are appropriate where there is willful disobedience or gross indifference but not where failure to comply was outside the control of the party. *See Dorsey v. Acad. Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970).

Courts in the Fifth Circuit look to the following considerations when determining if dismissal or default judgment is an appropriate sanction: whether failure to comply with the Court's order results from wilfulness or bad faith, not from an inability to comply; whether the deterrent value of Rule 37 cannot be achieved by the use of less drastic sanctions; and whether the other party's preparation for trial was substantially prejudiced. *See Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990); *Prince v. Poulos*, 876 F.2d 30, 32 (5th Cir. 1989); *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985). Because of the severity of the sanction, a default judgment or dismissal with prejudice typically is appropriate only if the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct. *See Compass Bank v. Villareal*, Civ.A. No. L-10-8, 2011

-11-

WL 1740270, at *5 (S.D. Tex. May 5, 2011) (citing cases). Further, "dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders." *Batson*, 765 F.2d at 514 (citations omitted).

The United States Court of Appeals for the Fifth Circuit has noted that dismissal with prejudice is "a draconian remedy" and the "remedy of last resort" "[b]ecause the law favors the resolution of legal claims on the merits and because dismissal is a severe sanction that implicates due process." *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir.1994) (citation omitted). Likewise, default judgment is a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations. *See Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n v. Am. First Mtg. Funding Corp.*, 874 F.2d 274, 276 (5th Cir. 1989). And there is generally a strong policy in favor of deciding cases on the merits. *See Fortenberry v. Texas*, 75 Fed. App'x 924, 926 n.1 (5th Cir. 2003).

Here, Plaintiff Demitri Brown offers no explanation for Plaintiffs' failure to pay the court-ordered fee award other than his having sent a contract to attempt to satisfy his obligation. But Defendant does not allege any prejudice, at this point, in his preparation for trial. And Defendant has not moved for any sanctions for any noncompliance with the orders compelling discovery responses that gave rise to the fee award under Rule 37(a)(5) – which is, notably, a provision that does not itself authorize dismissal or default judgment as a sanction for granting a motion to compel.

Again, without excusing or condoning Plaintiffs' noncompliance with the Court's April 1, 2014 order [Dkt. No. 105], the undersigned believes that the record to date does not justify dismissing Plaintiffs' claims and awarding a default judgment against Plaintiffs on Defendant's counterclaim. Rather, Plaintiffs Demitri Brown and Donna Evans-Brown should be ordered under Rule 37(a)(5)(A) to pay Defendant Chris Bridges the amount $19,342.00 in attorneys' fees and costs within 21 days of the date of the Court's order adopting this recommendation and should be warned that failure to do so will result in an order to show cause why Plaintiffs Demitri Brown and Donna Evans-Brown should not be held in civil contempt or otherwise sanctioned under Federal Rule of Civil Procedure 16 or 37 for repeated failure to comply with the Court's order.

<u>Plaintiff Demitri Brown's Motion for Sanctions</u>

Plaintiff Demitri Brown seeks sanctions for Defendant's alleged failure to comply with the Court's April 2, 2014 Memorandum Opinion and Order on Plaintiff's Motion to Compel Discovery Responses and for Sanctions [Dkt. No. 106]. In that order, the Court ordered Defendant to:

· supplement his response to Interrogatory No. 1 to provide the contact information, even if only counsel of record, to Plaintiff by April 16, 2014;

· supplement his response to Interrogatory No. 3 by April 16, 2014;

· to the extent that Defendant has objected to providing responsive documents or failed to "agree on a date and time for production" on the ground that Plaintiffs have not provided their discovery responses, Defendant must produce the

-13-

relevant, responsive documents to Plaintiffs, or provide them with access to such documents as they are kept in the ordinary course of business, by April 16, 2014; and

• in response to Request for Production No. 5, produce any "contracts involving defendant, Christopher Bridges, and Def Jam South" that relate to the relevant trademark and are from 1999 to present by April 16, 2014.

*See* Dkt. No. 106.

Plaintiff asserts that a review of Defendant's supplemental responses to Interrogatories Nos. 1 and 3 "makes it clear that nothing of substance has been supplemented by defendants, and that defendants refuse to waive their objection, or refused to comply with the court's order" and "illustrates that defendants have no intention of following the court's order or satisfying their discovery obligations under Fed. R. Civ. P. 26, 33, and 34." Dkt. No. 108 at 1-2. Plaintiff contends that Defendant "continue[s] to deliberately use discovery as an unethical tactic to perpetrate a fraud on this court," is "bragging that they have 'bought' this case," and should face "severe sanctions under Fed. R. Civ. P. 37(b), namely a dismissal of defendants' claims with prejudice and entry of judgment against them, and a two million dollar sanction for fraud on the court." *Id.* at 2. According to Plaintiff, Defendant has filed more than 25 fraudulent documents and should be sanctioned in the amount of $20,000.00 for each document. *See id.*

The undersigned again reminds the parties that they must confer before bringing a discovery dispute to the Court. Plaintiff appears to believe that his alleged

efforts to confer before filing his original motion to compel satisfy his obligation to confer regarding any deficiencies in the supplemental responses that the Court ordered before filing a motion for sanctions. *See* Dkt. No. 119 at 4. But they do not.

As to the substance of the motion, the undersigned, after addressing several motions in this case, believes that Plaintiff's view of fraud on the Court generally involves any factual allegation and contention that Defendant makes with which Plaintiff disagrees or that does not support Plaintiffs' case. And, here, Plaintiff points to only one specific allegation that he alleges is somehow fraudulent – Defendant's supplemental response to Interrogatory No. 3.

Plaintiff's motion first appears to assert that Defendant's supplemental response to Interrogatory No. 3 is an improper use of Federal Rule of Civil Procedure 33(d). But Interrogatory No. 3 itself requires Defendant to "[d]escribe in detail the documentation (written, oral, electronic or otherwise) that supports Christopher B. Bridges' sworn declaration to the Patent and Trademark Office that no other person has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely to cause confusion." Dkt. No. 108, Attachment 1 at 2. The interrogatory calls for Defendant to point to and describe documents, but, regardless, Defendant did not invoke Rule 33(d), explicitly or implicitly.

Plaintiff's other complaint is that Defendant's supplemental response falsely asserts that "Bridges is unable to locate any documents in his possession, custody, or control that may have existed in support of his referenced declaration to the USPTO at the time such declaration was made" and, "[t]herefore, Bridges cannot describe any

such documentation." *Id.* at 3 & Attachment 1 at 2. Plaintiff asserts that this response is false because Defendant originally objected that responding to this interrogatory was unduly burdensome. *See* Dkt. No. 119 at 2.

The undersigned finds no basis to believe that Defendant is defrauding the Court here. As Defendant explained, in his initial discovery response, Bridges stated that the interrogatory was unduly burdensome and oppressive because the referenced declaration was filed more than a decade ago and Bridges' records concerning that filing are not reasonably accessible. *See* Dkt. No. 113 at 2. That is different than objecting to a request as unduly burdensome because of what the responding party knows and reports to the Court to be a set of responsive documents or information that it would be unduly burdensome for the respondent to describe. And Defendant is not standing on these undue burden and oppressiveness objections that the Court already overruled. And he is not disavowing the original declaration. Rather, he explained that "[t]he declaration was made in November 2002, more than a decade ago, by an attorney and law firm that does not presently represent Bridges," but that, "pursuant to the Court's Discovery Order, Bridges, through his undersigned counsel, undertook a reasonable and diligent effort to identify any documents responsive to interrogatory No. 3, but this search yielded no results." *Id.*

Nevertheless, the Court should order Defendant to serve an additional supplemental response to Interrogatory No. 3 within 14 days of the date of the Court's order adopting this recommendation. That interrogatory does not ask for a description of documents existing at the time that the declaration was made. It asks for Defendant

-16-

to "[d]escribe in detail the documentation (written, oral, electronic or otherwise) that supports Christopher B. Bridges' sworn declaration to the Patent and Trademark Office that no other person has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely to cause confusion." Dkt. No. 108, Attachment 1 at 2. That includes documentation created after the declaration was drafted, signed, or submitted to the U.S. Patent and Trademark Office ("USPTO").

And Defendant does not describe what efforts he undertook through counsel to identify documents that may have existed at the time of the declaration's submission, including through Defendant's counsel at that time. The Court should order Defendant, within 14 days of the date of the Court's order adopting this recommendation, to produce a declaration of Defendant's counsel describing, without revealing attorney-client privileged communications or attorney work product, Defendant's and his counsel's efforts to identify any documents responsive to Interrogatory No. 3.

Plaintiff does not take issue with Defendant's supplemental response to Interrogatory No. 1. And the undersigned agrees with Defendant that there is no basis for Plaintiff's seeking sanctions as to Plaintiff's third set of discovery requests, as to which the Court denied a motion to compel in the April 2, 2014 Memorandum Opinion and Order on Plaintiff's Motion to Compel Discovery Responses and for Sanctions, *see* Dkt. No. 106 at 9, and which have been the subject of a separate motion to compel, *see* Dkt. Nos. 111 & 122.

But Plaintiff also asserts that Defendant's alleged compliance with the court-

-17-

ordered supplemental document production by inviting Plaintiff to examine unspecified document at Defendant's counsel's office is not a good faith substitute that satisfies Defendant's production obligations. *See* Dkt. No. 108 at 2-3; Dkt. No. 119 at 3. In response, Defendant points to the Court's order that Defendant must produce the relevant, responsive documents to Plaintiffs, or provide them with access to such documents as they are kept in the ordinary course of business, by April 16, 2014 and notes that Plaintiff "complains only about the *place* of production, namely, at Bridges' counsel's office." Dkt. No. 113 at 3-4 (emphasis in original). Defendant asserts that he "has no obligation to make responsive documents available to T.D. Brown at the Colorado penitentiary where he is incarcerated" and that "[n]either the Court's order nor [Federal Rule of Civil Procedure] 34 imposes such an obligation on Bridges, and T.D. Brown cites no authority in support of his objection." *Id.* at 4. Defendant continues:

> In fact, T.D. Brown's objection in this regard is duplicitous. When the Court ordered him to produce all of his responsive documents by September 17, 2013, (Order [DE 46], p. 21), instead of producing documents directly to Bridges, he directed Bridges to an unspecified set of documents at a nondescript residential structure in Louisiana. (*See* Bridges' Mot. for Sanctions [DE 53], pp. 3-4; Pls.' Resp. Br. [DE 60], pp. 3-5). Despite Bridges' objection, T.D. Brown provided no alternative means of production. (*Id.*) Further, in his recent Memorandum Opinion on Bridges' Motion for Sanctions in this regard, Magistrate Judge Horan did not recommend requiring Plaintiffs to produce documents to Bridges directly, and instead recommended that Bridges be required to first attempt to inspect the documents in Louisiana. (*See* Memorandum Opinion [DE 107], p. 6 ("Defendant must make an effort to review the proffered documents...."). Therefore, given T.D. Brown's own position on this issue and the direction provided by Magistrate Judge Horan, T.D. Brown has no basis to object to Bridges' continued reasonable offer to produce responsive documents at his counsel's office.

*Id.* at 4-5.

The undersigned understands that Defendant may be, at the least, not entirely satisfied with being required to inspect Plaintiffs' documents in Louisiana. But that is necessitated in part by the unavoidable fact that Plaintiff Demitri Brown is incarcerated – and is not unreasonable under the circumstances where Defendant's counsel is at liberty to travel to Louisiana. Plaintiff's incarceration certainly may have made certain aspects of litigating this case more difficult or costly. And Defendant may be displeased at that.

But, by making documents available for inspection only at Defendant's counsel's office – which is very likely not where Defendant's documents were or are kept in the ordinary course of business – Defendant is blinking at the reality that Plaintiff Demitri Brown is incarcerated and cannot travel at will and cannot reasonably be expected to inspect documents at a remote location under any circumstances. The Court's order did permit Defendant to provide Plaintiffs with access to documents as they are kept in the ordinary course of business. But, again, Defendant's counsel's office is apparently not where Defendant's documents are or were kept in the ordinary course of business. And, regardless, by citing Rule 34(b)(2)(E)(i), the Court gave Defendant the choice reflected in that rule of either "produc[ing] documents as they are kept in the usual course of business or ... organiz[ing] and label[ing] them to correspond to the categories in the request." FED. R. CIV. P. 34(b)(2)(E)(i). The Court was not authorizing Defendant to make the documents available at any location of Defendant's choosing, regardless of its accessibility to Plaintiff. Plaintiff's document requests apparently did not specify

a time, place, and manner for inspection. But, where they did not, Defendant is not permitted under Rule 34(b) to choose a location that is not "a reasonable ... place ... for the inspection." FED. R. CIV. P. 34(b)(1)(B). If it was not clear before, the undersigned will clarify here that the Court's order requires that Defendant give Plaintiffs access at a location that is reasonable under all of the circumstances.

Defendant offers no information on the volume of documents at issue or the burden involved in producing them to Plaintiffs where Plaintiffs can actually be found. But Defendant did see fit to incur attorneys' fees fighting Plaintiff Demitri Brown's efforts to get actual access to the documents that the Court ordered Defendant to produce. The Court should order Defendant to produce copies of, or otherwise make available to Plaintiffs at Plaintiffs' respective locations, the relevant, responsive documents to Plaintiffs within 14 days of the date of the Court's order adopting this recommendation. *See Lewis v. King County*, No. C08-1201-JCC-MAT, 2009 WL 1034241 (W.D. Wash. Apr. 17, 2009).

But, judging the sanctions that Plaintiff seeks against the standards described above, Plaintiff has not made the showing as to any of these deficiencies that would warrant dismissal of Defendant's counterclaim, entry of default judgment against Defendant on Plaintiffs' claims, or a monetary sanction – particularly of $2 million. Again, without excusing or condoning Defendant's compliance to date with the Court's April 2, 2014 Memorandum Opinion and Order on Plaintiff's Motion to Compel Discovery Responses and for Sanctions [Dkt. No. 106], the undersigned believes that the record does not justify any of these sanctions. But Defendant should be warned

that, while the Court does not yet find a clear record of delay or contumacious conduct or that Plaintiffs' preparation for trial was substantially prejudiced, the Court may find that any future failure to comply with the Court's orders does result from wilfulness or bad faith and is subject to sanctions.

### Recommendation

Plaintiff Demitri Brown's Motion for Sanctions [Dkt. No. 108] and Defendant's Motion for Plaintiffs to be Held in Civil Contempt [Dkt. No. 109] should be denied.

Plaintiffs Demitri Brown and Donna Evans-Brown should be ordered, under Federal Rule of Civil Procedure 37(a)(5)(A), to pay Defendant Chris Bridges the amount $19,342.00 in attorneys' fees and costs within 21 days of the date of the Court's order adopting this recommendation and should be warned that failure to do so will result in an order to show cause why Plaintiffs Demitri Brown and Donna Evans-Brown should not be held in civil contempt or otherwise sanctioned under Federal Rule of Civil Procedure 16 or 37 for repeated failure to comply with the Court's order.

The Court should order Defendant, within 14 days of the date of the Court's order adopting this recommendation, to serve an additional supplemental response to Interrogatory No. 3 and a declaration of Defendant's counsel describing, without revealing attorney-client privileged communications or attorney work product, Defendant's and his counsel's efforts to identify any documents responsive to Interrogatory No. 3.

The Court should order Defendant to produce copies of, or otherwise make

available to Plaintiffs at Plaintiffs' respective locations, the relevant, responsive documents within 14 days of the date of the Court's order adopting this recommendation.

Defendant should be warned that the Court may find that any future failure to comply with the Court's orders is subject to sanctions.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 1, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE